(Decided 20th November, 1890.)

ABRAHAM E. ALBERT *vs.* CHRISTIAN THOMAS.

*Deed—Construction—Conflict between General and Particular description—Easement.*

Where the easternmost portion of a lot designated as "lot No. 8," was laid out as an alley for the use of said lot in common with others, a deed purporting in the general description to convey said "lot No. 8," but in the particular description making said alley the eastern boundary of the lot described, will be held to carry the bed of the alley, notwithstanding such mention of the alley as the eastern boundary.

The intention of the deed being to convey the whole of lot No. 8, effect must be given to that intention, notwithstanding its mention of the alley as its eastern boundary.

Albert *vs.* Thomas.

A right of way appurtenant to a lot, cannot be used for the purposes and benefit of another lot, to which no such right is attached, even though such other lot be adjoining, and within the same enclosure with that to which the easement belongs.

APPEAL from the Circuit Court for Washington County.

The case is stated in the opinion of the Court.

*Exception.*—At the trial the plaintiff offered nine prayers, the third, eighth and ninth of which, as follows, were granted; his other prayers were rejected, and are, therefore, omitted:

3. That from all the facts and circumstances before the jury in this cause, there is no sufficient legal evidence to establish that the strip of land mentioned in the pleading and testimony was ever dedicated to the public as or for a public way or alley.

8. That if the jury shall find from the evidence that the defendant was entitled to a right-of-way over the land claimed by the plaintiff, either by grant or by prescription, that even then the plaintiff had a right to maintain a gate over said right-of-way for the protection of his land bordering on said right-of-way, if they shall further find such gate necessary for the useful and beneficial occupation of his land, looking to the situation of the property and its surroundings as sold and conveyed by said executors. And if the jury find that the defendant destroyed or removed said gate or bars, then the plaintiff is entitled to recover.

9. That if the jury find for the plaintiff, then they shall assess the damages at such sum as will compensate the plaintiff for the actual injury done.

The defendant offered the six following prayers:

1. That if the father of plaintiff bought his lot, as given in evidence, and the jury find by that deed his

land is abutted on the east by an alley, and further find that by the description in said deed the plaintiff is not entitled to hold land as for each as the claim now made by him, then the said deed furnishes no right of action, if the jury find that the trespasses complained of were committed upon land not included in plaintiff's deed, but upon land that was reserved for said alleyway.

2. That if the jury believe from the evidence that at the time of the alleged trespass the defendant was in possession of the lot sold by the Eichelberger executors to Mrs. Heffner, and that said lot abutted on an alley on the west and immediately in the rear of said lot laid out for the benefit of the Eichelberger lands, then the defendant was entitled to a right-of-way over said alley from his said premises for the use of and benefit of said lot so-constituting a part of said Eichelberger estate; and if the jury shall further find that the trespass complained of consisted in the removal by the defendant of a fence or obstruction which prevented the use by the defendant in the manner and to the extent aforesaid, of his said lot so constituting a part of the said Eichelberger estate, if the jury shall so find, then the plaintiff is not entitled to recover in this action.

3. That if the jury find from the evidence that in or about the year 1863, the place in question, and also the neighboring possessions of the plaintiff and defendant, were originally the property of the late Samuel Eichelberger, and that it was divided, laid off on a plat and sold to the present owners, or those under whom they claim, as bounding on and calling for the alley mentioned in the evidence, and that the said lots were bounded by said alley and designated as such in the conveyances; and if the jury further find that in or about the year 1880, the Mayor and Council of Hagerstown worked upon said alley and expended the money of the town thereon, and opened up a large portion thereof,

then the acts on the part of the said grantors constituted a dedication of said alley to the public, and the said acts on the part of said town constituted an acceptance of the same by the town, and the defendant had a right as one of the public to remove the fence or obstruction across said alley and to use the same.

4. That in order to constitute adverse possession, the plaintiff must show a continuous, notorious, uninterrupted, hostile and exclusive possession by himself and those under whom he claims, of the land claimed by him, and not included in the lines of his deed.

5. That the plaintiff and defendant deduce their titles from the same source as exhibited by the deeds under which they hold, and that the plaintiff, in the absence of all title but that derived from Eichelberger, is estopped from denying there is such an alley as that over which the defendant claims a right-of-way.

6. That if the jury believe from the evidence in this cause that the defendant, with others, used the strips of land mentioned in the deed from George Middlekauff to the plaintiff's father, and in the deeds of the properties of Heffner and others, and those claiming under them, lying east of said Thomas' lot, and contiguous to the same, and lying west and contiguous to the lots of Mrs. Boyd and others by hauling over, and driving stock in the same; and further find that the plaintiff changed the bounds or limits of the said strip of land or alley within the time he claims by adverse possession, then the said using of alley or strip of land, and changing of limits and boundaries, are interruptions of the plaintiff's claim by adverse possession, and the defendant cannot be held liable in damages in this action, unless the jury further find that the plaintiff holds possession of the same by deed of conveyance or grant.

The Court (HOFFMAN and SYESTER, J.) granted the third, eighth and ninth prayers of the plaintiff, and re--

Albert *vs.* Thomas.

jected all the prayers offered by the defendant (the second prayer of the defendant being rejected by a divided Court), and gave an instruction of its own as follows:

The jury are instructed, that according to the true construction of the deed from George G. Middlekauff to Christian Thomas, read in evidence, the right-of-way therein reserved is confined and limited to the use and convenience and benefit of the lots or parcels of land that constituted parts of the Eichelberger estate. And if the jury find from the evidence that the plaintiff is the owner, and in possession, of the parcel of land mentioned in the said deed; and further find that the lot in the possession of the defendant, and on which he resides, and on which the stable mentioned by the witness is located, was no part of the Eichelberger estate, then the right-of-way in question here cannot be claimed for the use and benefit of the said lot, or for any purposes or conveniences connected with the residence or stable thereon. And if the jury find that the acts complained of in this case were committed by the defendant, in pursuance or assertion of a right-of-way for these purposes, the plaintiff is entitled to recover. But if the jury further find from the evidence, that the defendant was also in lawful possession of a portion of the lands that were part of the Eichelberger estate, and that he committed the acts complained of in pursuance of a claim to use the same for the benefit alone of the said parcel of land last mentioned, and that he meant to use the right-of-way solely and exclusively for the benefit of the same, and not in any way for the benefit of the lot which was not part of the Eichelberger estate, then the plaintiff cannot recover.

The defendant excepted, and the verdict and judgment being against him, he appealed.

The cause was submitted to ALVEY, C. J., MILLER, IRVING, BRYAN, FOWLER, McSHERRY, and BRISCOE, J.

*Alexander R. Hagner*, for the appellant.

*J. M. Keedy*, for the appellee.

BRYAN, J., delivered the opinion of the Court.

Christian Thomas brought trespass *quare clausum fregit* against Abraham E. Albert. The defendant pleaded not guilty, and for a further defence set up a right-of-way over the *locus in quo*. This right is claimed under certain deeds made by the executors of Samuel Eichelberger, deceased, in pursuance of power given in his will. It has been a very difficult matter to obtain from the record a clear idea of the relative locations of the different lots of ground mentioned in the evidence. In most instances their boundaries are stated to be other lots which are described only by their owners' names. A simple diagram would have relieved the Court of a good deal of labor. It was not disputed that the plaintiff was in peaceful possession, under enclosures, of the lot of ground on which the trespass was alleged to have been committed. His title was derived from two deeds; one from Eichelberger's executors to Middlekauff, and the other from Middlekauff and wife to plaintiff's father, under whose will he claimed. Both of these deeds were made in 1866, and were in fee. The deed to Middlekauff conveyed lots designated on a plat of Eichelberger's real estate as numbers 2, 3, 7 and 8. This plat was not produced at the trial, and was stated to have been lost. The description of them given in the deed is as follows: "Numbers 2 and 3, fronting on the west side of South Potomac street, in Hagerstown, and adjoining the property sold by us as executors aforesaid, to Matthew S. Barber, on the north, and on the south the lot sold to John G. Knode, fifty-eight feet, and running back with the two parallel lines one hundred and eighty feet to lot No. 7; also lot No. 7, lying west of

Albert *vs* Thomas.

lots Nos. 2, 3, 4, 5 and 6 on said plat or map, and adjoining the land sold to said Matthew S. Barber on the north, and Costenboder on the west, and lot No. 8 and the lands of James D. Roman on the south, containing and laid out for said No. 7, one and one-quarter acre and thirty perches of land; also lot No. 8, lying west of the property of Thomas Boyd and Mrs. Margaret A. Heffner, and lot No. 7 on the north, and on the south by an alley, and lot No. 9 sold to Christian Thomas, and on the west by the lands of James D. Roman, and containing and laid out for said No. 8, one acre and thirty-six perches of land, with all the improvements and advantages belonging thereto, and subject to an alley laid out on said plat for the use and benefit of the lands described in said map or plat.'' The deed from Middlekauff and wife to Thomas conveyed lot No. 8; the boundaries were the same as given in the deed just mentioned, which was referred to as the source of the title, except that the eastern boundary was said to be ''an alley reserved in the sale of said deceased's estate, for the benefit of the purchasers of said real estate;'' the rest of the description was in these words: '' Containing one acre and thirty-six perches of land, more or less; said lot being No. 8 on a plat or map of said deceased's estate, made * * * * for the executors of said Eichelberger, deceased.'' The defendant's title was by demise from Eleanora and Florence Albert; the Misses Albert acquired their title from Laura V. Heffner, who conveyed to them in 1886 a lot of ground described as being on the west side of South Potomac street and running back one hundred and sixty-nine feet to the *east margin of an alley*. A few feet of this lot, from five to eight, bounding on Potomac street, and also on the alley, had been purchased by Miss Heffner's mother from the Eichelberger executors; the other portion of the lot did not come from the Eichelberger estate; in the deed to Mrs.

Heffner the land sold to her was described as running back one hundred and sixty-nine feet to an alley. This alley was about ten feet wide. The land conveyed in the deed to Middlekauff was not bounded on the alley, but it included the bed of it. It is declared that all of it is subject to an alley, laid out on the plat above mentioned for the use and benefit of the lands described therein, which means, of course, that the fee is conveyed to the grantee, and an easement is reserved; and in point of fact an easement identical with this reservation was granted to Mrs. Heffner. Moreover, we see that lots 2 and 3 in the deed to Middlekauff run back one hundred and eighty feet, which reached the western margin of the alley, as the one hundred and sixty-nine feet of the Heffner lot reached its eastern margin. Lot No. 8 is described as lying west of the property of Thomas Boyd and Margaret A. Heffner, and as it included the whole of the alley, its contact with the Heffner land was on the eastern margin of the alley. The intention of the deed from the Middlekauffs to Thomas was to convey the whole of lot No. 8; and according to *Buchanan's Lessee vs. Steuart*, 3 *Harris and Johnson*, 329, we must give effect to that intention, notwithstanding its mention of the alley as its eastern boundary. The general words of description are adequate to carry out the manifest intention of the deed, and they cannot be defeated by a discrepancy in one of the details.

The evidence tended to show that the defendant was building a stable on the Heffner lot, which was occupied by him under a demise from the owners; but the stable was not located on that part of the lot which came from Eichelberger. He broke down the plaintiff's fence, and hauled the materials for building the stable over the plaintiff's land along the line of the alleyway. He did not approach the lot on the side where the Eichelberger portion lay, but on the opposite side, where the property

was situated which had not belonged to Eichelberger; he deposited the materials on this latter portion, and did not use the alleyway for the purpose of access to the Eichelberger portion, or for any purpose connected with this portion. It is settled beyond dispute that a man who has a right-of-way over another's land cannot use it except according to the terms of the grant. It is said that, "as every easement is a restriction upon the rights of property of the owner of the servient tenement, no alteration can be made in the mode of enjoyment by the owner of the dominant heritage, the effect of which will be to increase such restriction." Here the defendant was not using the right-of-way for the purpose of entering the lot to which it was appurtenant, nor for any purpose connected with it; but was using it for the purpose of building on an adjoining lot belonging to him. The circumstance that the two lots were within the same enclosure cannot be of any importance. The authorities show how severely these rights-of-way are restricted. In *Woolrych on Ways, page* 34, (4 *Law Library,*) several cases are cited. We will quote two of them: "The defendant justified by prescribing for a right-of-way to a certain close, but the plaintiff replied that the defendant had brought a load of hay which grew upon another close, along the way, and this was held a sufficient answer, for if a man have a private way to a close, he must not enlarge it to other purposes. So, where in trespass it appeared that the defendant had a way over the plaintiff's ground to another close, B, and that he not only used the way thus, but drove his beasts to a third close, lying still farther off, it was said that when the defendant had driven his beasts to the close B, to which he had his way, he might drive them whither he would. But it was answered, that the defendant might purchase a hundred or a thousand acres adjoining to the close B, and thus

the plaintiff would lose the benefit of his land; and the Court acceded to this argument, and gave their judgment for the plaintiff, thereby supporting the doctrine that a grant ought to be construed according to the intent of its original creation." In *Davenport vs. Lamson,* 21 *Pickering,* 72, the defendant had a right-of-way over the plaintiff's close to a three-acre lot, and he also owned a nine-acre lot, which was beyond the three-acre lot, adjoining it, but not separated by any fence. He loaded his cart with produce taken from each of his lots and passed with it from the three acre lot over the plaintiff's close. It was held that he was liable in *trespass quare clausum fregit* for abusing his right-of-way. The Court said "he had a special right of way for going to and from the three acre close, and it would not be consistent with the terms of this grant to use the right-of-way to other closes beyond the three-acre close." To the same effect is *Skull vs. Glemster,* 111 *Eng. Common Law Reports,* 80. The Court in its instruction left it to the jury to find whether the defendant was using the right-of-way for the purposes and benefit of the Eichelberger portion of the lot, or of the other portion. On the first hypothesis the verdict was to be for the defendant ; on the second for the plaintiff. The jury found for the plaintiff. There was some evidence tending to show that the plaintiff and his father had held continuous possession since 1866, adversely to the claim of a right-of-way, and there was also contradictory evidence on this point. The evidence of a user of a right-of-way by the defendant, and other persons, did not tend to establish the right independently of the Eichelberger deeds. As the Court's instruction conceded this right to the defendant, the questions of user and adverse possession are unimportant in the present condition of the case. The questions involved were left to the jury on terms as favor-

able to the defendant as any aspect of the case could warrant. We see no error in granting the plaintiff's prayers or in rejecting the defendant's.

As the judgment will be affirmed, there is no necessity for discussing the motion to dismiss the appeal.

*Judgment affirmed.*

(Decided 4th December, 1890.)