# HERMANN KRETZ v. FIREPROOF STORAGE COMPANY.[1]

November 13, 1914.

Nos. 18,787—(47).

**Reservation of right of way — modification in later deed.**

1. Where a right of way exists over one tract of land as appurtenant to another, the owners of the two tracts may modify the location and extent of the way at their pleasure. A recital in a deed reserving a right of way that the grantor is the owner of the dominant tenement, is proof of the fact of such ownership. A reservation of a right of way in a deed made in 1881 is held to supersede a right of way different in extent created in a deed made in 1866.

**Right of way — intention of parties.**

2. A right of way appurtenant to one lot cannot be used by the owner thereof as a right of way to another separate tract. But the extent of the tract to be served in connection with the dominant tenement is a question of intention of the parties, and the intent will be determined by the relation of the easement to the land to which it is appurtenant, and other surrounding transactions, including the practical construction of the contract by the parties.

**Same — practical construction.**

3. A right of way was reserved by deed to the owner of part of lot 6. The owner of this lot then erected a building covering this part of lot 6 and also part of lots 4 and 5, adjoining. After this, the right of way was confirmed by a later contract. *Held*, an intent was manifested that the right of way shall serve the building as erected at the time the contract was made, the practical construction of the parties being in accord with this construction.

**Right of way — use by owner of servient tenement.**

4. The owner of the fee of land over which a right of way, not exclusive, is granted, may himself use the land which is subject to the easement, if by so doing he does not unreasonably interfere with the special use for which the easement was created. The way should be maintained at a level reasonably calculated to serve the owner of the fee and the owner of the easement.

1 Reported in 149 N. W. 955.

**Limitation of use.**

   5. A grant of a right of way to and from an opera house does not limit the use of the way to such time as the property is used as an opera house, but it is available in connection with any proper use of the property.

Action in the district court for Ramsey county to enjoin defendant from using a certain passway 12 feet wide on the easterly side of the northerly 65 feet of lot 6 mentioned in the opinion. The case was tried before Catlin, J., who made findings and ordered judgment in favor of plaintiff. From an order denying its motion for an amendment of the findings and for a new trial, defendant appealed. Reversed and new trial granted.

*B. H. Schriber,* for appellant.

*John F. Fitzpatrick,* for respondent.

HALLAM, J.

Action to enjoin defendant from using a right of way.

The facts may be more easily understood by reference to the diagram on page 306.

In 1866 John L. Merriam owned lots 6, 7 and 8, block 23, St. Paul Proper. These lots are each 50 x 150 feet, fronting on Fourth street, and together they form a tract 150 feet square on the southeast corner of Fourth and Wabasha streets. On October 30, 1866, Merriam deeded to one party the north 60 feet, and to another the south 25 feet, of the south 85 feet of the west 38 feet of lot 6. Both deeds conveyed also "a perpetual right of way over and upon a strip of land on the easterly side of said lot 6, 12 feet wide through the whole length of said lot 6, for the purposes of ingress and egress, to and from said described portion of said lot 6, and as appurtenant thereto." By 1881 such conveyances had been made that the north 65 feet of lot 6 was owned by Merriam and William F. Davidson in equal undivided shares. On September 13, 1881, William F. Davidson and wife deeded to Merriam the undivided one-half of the north 65 feet of lot 6, with the following exception: "Excepting and reserving to said parties of the first part as the owners of the southerly 85 feet of said lots 6, 7 and 8

127 M.—20.

\* \* \* the right of way over a strip of ground twelve feet wide along the easterly side of said lot 6."

In 1882, Davidson commenced the erection of the Grand Opera House, covering the south 85 feet of lot 6 and also of lot 5 and the west one-half of lot 4.

On June 21, 1883, Merriam leased to Davidson for 25 years the east 29½ feet of the north 65 feet of lot 6. This lease contains this clause:

"Subject to the exception and reservation to said William F. Davidson, contained in a certain deed from him and his wife to said party of the first part dated September 13, 1881. \* \* \* whereby a right of way over a strip of ground twelve (12) feet wide along the easterly side of said lot six (6) is reserved to said second party \* \* \* as the owner of the southerly eighty-five (85) feet of lot six (6) seven (7) and eight (8) of said block \* \* \*." and also this clause:

"It is further agreed that nothing in this contract shall be construed as in any manner changing or vacating the said right of way over a strip twelve (12) feet wide, along the easterly side of said lot six (6) saved and reserved in and by said deed of September 13, 1881, hereinbefore described save and except as such right of way may be temporarily affected during the term hereby granted, and by virtue of this agreement."

The walls of the opera house were then up and reference is made to it in that Davidson was permitted to construct an iron stairway and fire escape leading from the gallery and second floor of the opera house building to a platform on this 29½-foot strip. There was no entrance to the opera house from the 12-foot right of way or from the leased strip save the stairway and fire escape above referred to.

In 1889 the opera house was burned, leaving, however, the walls standing. The building was not rebuilt as an opera house. In 1908 Watson P. Davidson, who had by mesne conveyances acquired the title of William F. Davidson to the opera house property and also to the right of way, leased the same to the defendant for a storage warehouse. In 1908 defendant erected a warehouse four

stories high, using the walls of the old opera house as its outer walls, except that the west wall was moved 8 feet further to the east.

In the meantime the Merriam title to the north 65 feet of lot 6 had passed to the Merriam Realty Co., and in 1911 that company deeded it to plaintiff and with it also the north 65 feet of lots 7 and 8. During 1911, plaintiff built on this tract the Commerce Building, 12 stories high. In constructing this building he left a driveway from Fourth street to defendant's warehouse nearly coincident with the right of way in question. This driveway was arched to the height of one story, and above the first story the Commerce Building was built and extended over it. The driveway thus left, varied from the right of way in question in this: Five two foot columns supporting the arch and the building above it were built on the easterly side of the 12-foot strip, and to offset this encroachment plaintiff widened the strip nearly two feet on the westerly side by setting the building that distance in upon his land.

In 1912 plaintiff commenced this action and asked judgment that defendant be excluded forever from the 12-foot passway and enjoined from using the same in any manner or for any purpose. The trial court did not sustain this contention, but held that the passway must be limited in its use to access to and from lot 6, and ordered judgment enjoining the use of it altogether until defendant shall divide its building and erect a solid wall without openings therein on the line between lots 5 and 6.

One of the contentions of plaintiff is that defendant's right of way rests solely on the deeds given by Merriam in 1866, which deeds created an easement of right of way over a 12-foot strip running through the whole length of lot 6. It is claimed that the use of the southerly end of this strip for any other purpose than a way is unwarranted and "deprives him of the right to keep open the rest of the passageway" over plaintiff's land, or at least that it imposes an additional burden on the passageway over plaintiff's land, which should be enjoined. We think it clear that defendant's rights do not rest on the 1866 deeds, but that the later reservations in the deed from Davidson to Merriam made in 1881 superseded the grants in the earlier deeds. The 1881 deed reserved to Davidson, as owner

of the south 85 feet of lots 6, 7 and 8, a 12-foot right of way over the north 65 feet of lot 6. Davidson and Merriam owned the northerly 65 feet in common. This deed recited that Davidson owned the south 85 feet. This recital is proof that this was the fact. The parties to a deed are estopped by recitals in it where the facts recited are material to and of the essence of the contract. Bigelow, Estoppel, (6th ed.) p. 408; Herman, Estoppel & Res Judicata, § 618; Daughaday v. Paine, 6 Minn. 304, 310 (443); Holcombe v. Richards, 38 Minn. 38, 45, 35 N. W. 714; Williams v. Swetland, 10 Iowa, 51. It was perfectly competent for these parties, being the owners of all the land involved, to modify or establish this right of way as they saw fit. The effect of this reservation was to establish a right of way from Fourth street to the south 85 feet of lots 6, 7 and 8.

This is the only right of way with which the parties to that transaction were thereafter concerned, and the only one which concerns the parties to this action. We need not consider what the situation would have been if the deed of 1881 had not been given.

2. The important contention in the case is that even this 1881 deed gave to Davidson and his grantees no right to use this right of way as a means of access to a building which covers not only lot 6, but also part of lots 4 and 5. This is not an easement in gross and it exists only as appurtenant to some tract of land. If an appurtenant right of way is granted to A as the owner of lot 6, the easement can be used only in connection with that lot. It cannot be used as a right of way to any other separate tract. It is also contended that such a grant does not give to A the right to inclose additional lands with lot 6 and thus impose upon the easement the burden of serving a larger tract than that contemplated in the deed. The weight of authority seems to sustain this view in the absence of controlling evidence manifesting a different intent. Illustrative cases are: Evans v. Dana, 7 R. I. 306; Albert v. Thomas, 73 Md. 181, 20 Atl. 912; Greene v. Canny, 137 Mass. 64; French v. Marstin, 32 N. H. 316; Harris v. Flower, 91 L. T. 816. Other cases are cited in 14 Cyc. 1209; Washburn, Easements, *60; Gale, Easements, 498, et seq. But we do not find it necessary to determine this as an abstract question. The extent of the tract to be served by the

easement is a matter of intention. Abbott v. Butler, 59 N. H. 317; Sweeney v. Landers, 80 Conn. 575, 69 Atl. 566; Rowell v. Doggett, 143 Mass. 483, 10 N. E. 182. If at the time of the grant of the right of way as appurtenant to lot 6, lot 6 was known to be inclosed by means of permanent walls with lots 4 and 5, we should not doubt that an intention was manifested that the easement should serve lot 6 as it was used in connection with the other lots and in effect serve all three.

Coming then to the facts of this case, we must construe this 1881 deed in connection with the lease in 1883, which confirms this easement, and construe both in connection with attendant circumstances, for when the extent of the easement is not clearly declared the intent of the parties will be determined by the relation of the easement to the land to which it is appurtenant, and other circumstances surrounding the transaction, including the conduct and the practical construction of the contract by the parties. Winston v. Johnson, 42 Minn. 398, 45 N. W. 958; Lidgerding v. Zignego, 77 Minn. 421, 80 N. W. 360; 77 Am. St. 677.

3. At the time the 1883 lease was given, the tract now used by defendant, part of lots 4, 5 and 6, was, as above stated, enclosed within the opera house walls. These walls, and the building they enclosed, were in contemplation a permanent structure. This contemplation has become a reality to the extent that, notwithstanding the fire, the walls still stand and now enclose a building with perhaps greater prospect of permanency than ever before. Yet if the contentions of plaintiff are sound Davidson could not have used this right of way for any practical purpose at all. Had he opened an entrance upon it to the opera house he could not use it to conduct a performer to the stage on lot 4, nor could he permit a patron to enter by means of it and take a seat in the front of the house on lot 5, and if he seated such a patron in the rear of the house on lot 6 he would be obliged to erect a screen between him and the stage. Surely such results were not intended by Merriam and Davidson when this easement was confirmed by the 1883 lease. We think it clear that they intended that the easement so confirmed should permit the enjoyment of a

right of way from Fourth street to the opera house as it was then constructed on parts of lots 4, 5 and 6.

The conduct of later owners, including plaintiff, shows a practical construction of these instruments and leaves no doubt as to their own view of the rights of defendant. At the time the storage warehouse was built the Merriam Realty Co. was the owner in fee of the 12-foot strip. The warehouse was built with its entrance on the strip with the manifest purpose of using the right of way over it as a means of access from Fourth street. Yet the Merriam Realty Co. voiced no word of protest either during the construction of the building or during the years thereafter during which this entrance to the warehouse was used. The deed by which the Merriam Realty Co. conveyed to plaintiff the northerly part of lots 6, 7 and 8, including this strip, excepted this same right of way. It referred to it as reserved or granted by the 1866 deed, but this is not of great importance. It did except it. After plaintiff acquired the property and planned the construction of his 12-story office building, he wrote defendant, "I shall, however, leave a passageway over the easterly 12 feet of the northerly 65 feet of said lot 6, sufficient to answer all the purposes of a right of way to that part of lot 6 which is in the rear of the northerly 65 feet thereof," and he did do so. He entered into negotiations, for the most part fruitless it is true, predicated on the assumption that defendant had a subsisting right of way, and looking toward the adjustment of some small controversies between the parties. He paved this right of way from Fourth street to the entrance to the warehouse with concrete, and he himself habitually passed over it and through defendant's warehouse to the rear of his 12-story building. The recognition of the existence of this right of way as a means of access between Fourth street and the warehouse was decisive and beyond question. Our construction of these instruments is in accordance with the construction placed upon them by the parties concerned, and we hold that defendant has a right of way over this 12-foot strip from Fourth street to its building, and the whole thereof.

4. It is contended the right of way is not maintained at the proper level. The pavement laid by plaintiff is on the level of

Fourth street. Defendant has raised the level at the southerly end. We do not agree with defendant that it has a right to maintain this right of way at the level that existed before the lots were graded. Such a rule in case of city lots would lead to absurd consequences. Nor do we agree with plaintiff that it must necessarily be maintained at the level of Fourth street. Defendant's right to use this strip is not exclusive of plaintiff. Plaintiff no doubt has the right to use this strip, if by so doing he does not unreasonably interfere with the special use for which the easement was created. Thompson v. Germania Life Ins. Co. 97 Minn. 89, 106 N. W. 102. The passway should be maintained at a level reasonably calculated to serve both plaintiff and defendant. See Killion v. Kelley, 120 Mass. 47; Greenmount Cemetery Co.'s Appeals, 4 Atl. 528 (Pa.). There is no finding that the present level is not such a level.

5. In defendant's chain of title is a deed given April 1, 1884, by W. F. Davidson to the St. Paul Opera House Co. This grants a right of way over this strip "to [and] from said opera house." Plaintiff claims this restricts the use of the passway to use in connection with an opera house and that it cannot be used in connection with a storage warehouse. We are of the opinion that the use of the passway was not restricted to such time as the dominant tenement should be used as an opera house, but that it is available in connection with any proper use of the dominant tenement. Bailey v. Agawam National Bank, 190 Mass. 20, 76 N. E. 449, 3 L.R.A.(N.S.) 98, 112 Am. St. 296; White v. Grand Hotel (1913) 1 Ch. 113, 33 Ann. Cas. 472.

Order reversed and new trial granted.

On December 21, 1914, the following opinion was filed:

PER CURIAM:

Appeal from the clerk's taxation of costs. The clerk taxed against respondent the full cost of printing the record, at sixty cents a page. The propriety of this action is the principal question raised on this appeal. This case was tried in the trial court with the case of Davidson v. Kretz, infra, p. 313, and the appeal of Davidson in that case and

the appeal of appellant in this were presented together in this court, the same record being used on both appeals. Respondent contends that, in view of this fact, the cost of printing should be apportioned between the two cases and half charged to each case. It appears that all of the record that was printed was necessary to the presentation of the appeal in this case, except twenty-seven pages thereof, the expense of which amounts to $16.20. The appellant now concedes that this may be eliminated. As to the balance of the record, it must be held, following Hess v. Great Northern Ry. Co. 98 Minn. 198, 201, 108 N. W. 7, 803, that under the statutes of this state the court has no discretion in the allowance, disallowance or apportionment of disbursements, and that, inasmuch as this disbursement was necessary to the presentation of the appeal in this case, it must be allowed. The clerk's taxation of costs is affirmed, except as to the item of $16.20 above mentioned.