GEORGE J. HALES v. ATLANTIC COAST LINE RAILROAD COMPANY
AND D. J. ROSE AND R. H. HICKS.

(Filed 4 October, 1916.)

**1. Easements—Appurtenant—Railroads—Deeds and Conveyances—Contracts —Interpretation.**

Where the owner of lands grants to other private and adjoining owners the privilege to cross his lands with one railroad siding at a certain location, "not to be used by or for them or their tenants or any other owner of said lot, after thirteen years from date"; that the privilege was given to reach the grantee's lot with a side-track, and they were not to place cars on the grantor's lot; *Held,* an easement in gross did not pass by the conveyance, but a right of way appurtenant to the business lot of the grantees and the tenants and occupants under them, and thereunder a railroad company cannot acquire from the private grantees a right of use of the easement for the general public, or extend the roadway to points beyond to handle the business of its other patrons or customers.

**2. Same—Injunction.**

Where the owner of lands has granted the privilege of a spur-track across his lands appurtenant to the lands of adjoining private owners, and the railroad company has attempted to acquire this privilege and extend it to other of its customers in the town: *Held,* the right to the extended easement may be acquired by the excessive user, and the trespass being a continuing one, may be enjoined, on the ground that damages at law are inadequate, and to prevent a multiplicity of suits and vexatious litigation. *Jones v. Lassiter,* 169 N. C., 250, cited and distinguished.

**3. Same—Damages.**

Where a railroad company is attempting an excessive use of a spur-track permitted over the lands of the owner appurtenant to the private owners of adjoining lands, under their contract alone, and had not entered upon the lands under its statutory right of condemnation, the principle that the owner granting the privilege has only his right of action for damages arising from the excessive user has no application.

**4. Same—Statutes.**

Section 1097 of the Revisal, subsec. 5, authorizing railroad companies, under certain conditions, to establish side-tracks for the accommodation of private industries, has no application where it is shown

that the railroad company has acquired, from a private owner, the right to a spur-track over the lands of an adjoining owner, and appurtenant to his own land, and is using it in connection with its other patrons, not contemplated by the grant under which it claims the right.

**5. Railroads—Spur-tracks—Condemnation — Corporation Commission — Statutes.**

A railroad company, of its own initiative or by virtue of a contract with private persons, can acquire no right to construct and use its side-tracks to private industries off its right of way and over the lands of intervening owners against their will; and where it has permanently located its line, it is, as a rule, restricted to that and the right of way incident to it; nor is this principle affected by Revisal, sec. 1097, subsec. 5, which authorizes the Corporation Commission to permit the building of industrial spur-tracks after investigation.

**6. Railroads—Spur-Tracks—Easements—Appurtenant—Equal Facilities.**

Where the grantees of the use of a spur-track over the lands to be used only with reference to the grantees' private business enterprises located on their own lands have granted the right of this use to a railroad company which seeks to extend it to its other patrons, the railroad company can only act as the agent of the grantees of the right, with only such powers as they may have had, and the rule that such corporations are required to furnish equal facilities to all its shippers has no application.

CIVIL ACTION from EDGECOMBE, heard on return to preliminary restraining order and on motion to make the same permanent, before *Connor, J.,* at Wilson, N. C., on 7 July, 1916.

There was judgment dissolving the restraining order, and plaintiffs, having duly excepted, appealed.

*G. M. T. Fountain & Son for plaintiff.*
*L. V. Bassett and F. S. Spruill for defendant.*

HOKE, J.  On the hearing it was properly made to appear that on 8 June, 1915, defendants Rose and Ricks bought and plaintiff sold and conveyed to said defendants a certain right of way over a lot of plaintiff's in the city of Rocky Mount, the agreement between them being embodied in a written contract, signed by all the parties, in terms as follows:

"This contract, made this 8th day of June, 1915, by and between D. J. Rose and R. H. Ricks of the one part and G. J. Hales of the other part:

"Witnesseth, That for and in consideration of the sum of five hundred dollars ($500) paid by said Rose and Ricks to said Hales, the said Hales grants to them for the period of thirteen (13) years from date the privilege of crossing with one railroad siding his lot on Washington

and Marigold streets as situated on the blue-prints laid out by the railroad engineer from said Hales' present siding south along the western end of the machine works lot or said Rose and Ricks lot; said privilege not to be used by or for them or their tenants or any other owner of said lot after said thirteen (13) years period without new contract being made.

"It is further agreed between said Rose and Ricks of the one part and Hales of the other part, that this privilege is given to reach said Rose and Ricks lot with a side-track, and that said Rose and Ricks are not to control, use, or have cars placed on said part of track lying on said Hales lot."

That, acting under and by virtue of said contract, the railroad extended its track and has been operating its cars over said right of way, delivering freight to said defendants doing business on said lot until some time in 1916, when defendant railroad, acting under an arrangement or agreement with its codefendants, Rose and Ricks, both claiming the right to do so under the above contract of plaintiff, have extended said track 40 feet beyond the lot of Rose and Ricks and have been and are delivering freight to others and to persons who are not occupants of the Rose and Ricks lot described and referred to in the contract of plaintiff, among others, to the Builders' Supply Company, a corporation doing business on another piece of property. It appears further that defendant railroad company, under an arrangement or agreement with its codefendants, and claiming the right to do so under said contract of plaintiff, has been for some time making use of said track and right of way across plaintiff's lot in order to make deliveries of freight to the wholesale merchants doing business in lower Rocky Mount, and defendant company, in its answer and affidavits, avers its purpose and claims the right to do so in performance of its duties as common carrier which require it to afford equal facilities to all persons properly applying to ship over its lines.

From a perusal of the contract between plaintiff and Rose and Ricks, and under which defendants claim the right to act, it appears that the grantees bought and intended to buy, and grantor sold and conveyed and intended to sell and convey, a right of way over plaintiff's lot for the purpose of enabling said grantees to ship freight to them and others doing business on the lot specified in the instrument. The right granted is "to cross with one railroad siding his lot on Washington Street, etc., from said Hales' present siding south along the western end of said Rose and Ricks lot. Said privilege not to be used by or for them or *their tenants* or any other owner of said lot after thirteen years from date." It is further agreed between Rose and Ricks of the one part and Hales of the other part that this privilege is given to reach the Rose and Ricks lot with a side-track, and said Rose and Ricks are not

to have or place cars on the Hales lot," etc.  And it is clear from the language of the contract and the attendant circumstances that the right obtained was not an easement in gross, but a right of way appurtenant to the business lot of the grantees and the tenants and occupants under them, and it was no part of their purpose to pay out their money to procure a right of use by and for the general public. *Simmons v. Groom,* 167 N. C., 271.

This being, in our opinion, the correct construction of the contract, the grantees acquired no right to extend this privilege to other persons doing business on other lots, and could not confer upon the railroad the right to use this track for the purpose of general delivery of freight in South Rocky Mount or otherwise. *Wood v. Woodley,* 160 N. C., 17; *Winslow v. City of Vallejo,* 14 Cal., 723; *Shaver v. Egdell,* 48 W. Va., 502; *Greene v. Canny,* 137 Mass., 64; *Davenport v. Lawson,* 38 Mass., 72; *Dudgeon v. Bronson,* 159 Ind., 562; *Schuroele v. Betz,* 212 Pa. St., 32; 14 Cyc., pp. 1206, 1208, 1209.  In *Schuroele's case, supra,* it was held: "That an easement of right of way over another's property is appurtenant to the particular piece of ground of the dominant owner with which it is granted, and is not personal to the owner, authorizing him to use it in connection with other real estate he may own abutting on the right of way."

In 14 Cyc., 1209, it is said: "An easement can be used only in connection with an estate to which it is appurtenant, and cannot be extended to any other property which he may then own or afterwards acquire."  And these and other authorities are to the effect that the unwarranted user of the way by the dominant owner in excess of the right granted will amount to a civil trespass, and, when the same is repeated and continuous, and especially when in the assertion of ownership, that injunction is the proper remedy. *Wood v. Woodley, supra; Cobb v. Clegg,* 137 N. C., 153; *Greene v. Canny,* 137 Mass., *supra; West v. R. R.,* 137 Ala., 568; *Society v. Morris Canal and Banking Co.,* 1 N. J. Eq., 157; *U. S. Freehold, etc., Co. v. Galligos,* 89 Fed., 769; 22 Cyc., p. 836; 2 Joyce on Injunctions, sec. 1129; Jones on Easements, sec. 879.  It is well understood that a prescriptive right to an extended easement may be acquired by excessive user, Washburn on Easements, 3 Ed., p. 141; and in 22 Cyc., *supra,* it is said: "When acts of trespass are continuous and constantly recurring whereby, if permitted to continue, irreparable injury may result, as where the continuous wrongful invasion of plaintiff's right might ripen into a prescriptive right, an injunction will lie to restrain such trespasser, both on the ground that the remedy at law by suit for damages is inadequate and to prevent a repetition and multiplicity of suits."

In Jones on Easements: "It is sufficient ground for such relief that the injury cannot be adequately compensated in damages or that the

injury is a continuing one and compensation at law could be had only by successive suits, when relief in equity will be granted to prevent multiplicity of suits and vexatious litigation." And in *Society v. Morris Canal Co.,* 1 New Jersey Eq., *supra,* it was held: "That an injunction ·is a preventive remedy and will not lie for past injuries, but if injuries are continued and the right to continue them is set up and persisted in, the court may interfere by injunction."

It is urged for defendant company that as the defendant company is a public-service corporation, required to afford equal facilities for all shippers who apply in like case, and the railroad track is an accomplished fact, the court will not interfere with additional use of the track for the purposes indicated, but will leave the plaintiff to its action for damages, citing, among other cases, *Waste Co. v. R. R.,* 167 N. C., 340; *Griffin v. R. R.,* 150 N. C., 312. But these decisions and the principle upon which they rest afford no protection to the defendant on the facts presented in this appeal. They were cases where the railroad company, under statutory authority, had entered on plaintiff's property or interfered with his proprietary interests and had the right to continue so in the exercise of the quasi-public franchise conferred upon the company for the public benefit, and the Court very properly held that the question presented was the award of compensatory damages. But in this case the entry, as stated, was under and by virtue of a contract between individuals in which a right of way was acquired for a specified and private purpose. The company, therefore, is not on this lot or using it in the exercise of its franchise, but only as agents of their co-defendants, the grantees of the easement.

And the same answer must be made to the position that the defendant company is protected in the use of this track and right of way under section 1097, Revisal, subsec. 5, authorizing, under certain conditions, the establishment of side-tracks for the accommodation of private industries. The·section referred to confers upon the Corporation Commission the power to establish these sidings under certain conditions, and restricts the exercise of such right to 500 feet in length. But a railroad company, of its own initiative or by virtue of a contract with private persons, can acquire no right to construct and use side-tracks to private industries off their right of way and over the lands of intervening owners against the will of such owners. When they have once permanently located their line, they are, as a rule, restricted to that and the right of way incident to it. Pierce on Railroads, ch. 9, p. 254; Elliott on Railroads, 2 Ed., sec. 930. And the statute referred to was not intended to alter or impair this principle except in the way and by the agencies specified therein, that is, by the Corporation Commission, and after investigation by them.

The position is well illustrated and the authorities correctly applied in the recent case of *Butler v. Tobacco Co.,* 152 N. C., 416, and in which it was held:

"1. Without express legislative power, a city may not authorize a contract between a manufacturing company and a railroad company for the building of a side-track across its public street beyond the right of way of the latter for the benefit of the former and its business. *Griffin v. R. R.,* 150 N. C., 312, cited and distinguished.

"2. A citizen whose property is injured and who is deprived of his right of easement to freely pass and repass along a street and sidewalk of a town by reason of an unauthorized license to a railroad company by the town to build a private siding across the street beyond the right of way, for the benefit of another, is entitled to an injunction, although his property is not immediately adjacent."

And the case of *Jones v. Lassiter,* 169 N. C., 750, to which we were also referred, has very little or no resemblance to the facts of this record. In that case it appeared that the city of Raleigh, also defendant, was engaged in paving its streets; had placed a plant for preparing material on a lot acquired for the purpose, and was carrying on this work when plaintiff, the owner of a lot near to the plant and 175 feet distant therefrom, instituted suit to restrain the operation of the plant, on allegation with supporting affidavits that the operation of the plant created a nuisance, to the special injury of plaintiff's property. It appeared that the plant was fittingly located for the designated purpose, and its operation was required for carrying on the public work of paving the streets, and it would only continue for something like three months; and it was held that, under such circumstances, an injunction would not lie, the case being one where the immediate insistence on the private right must yield to that extent to the public good. It will be noted that defendants were engaged in a public work for the public benefit; that the fact of an actionable wrong had not been established, but only alleged, and that the interference with proprietary rights of plaintiff, if any existed, was only temporary, whereas, in our case the wrongful invasion of plaintiff's rights is admitted or plainly established: defendant company, as stated, has entered upon plaintiff's property and constructed the track under a contract between individuals in furtherance of a private enterprise, and this unwarranted and excessive user of the right of way is not only continuous and repeated, but is persisted in, under claim of right.

In our opinion, there was error in refusing to continue the injunction, and this will be certified, that judgment may be entered in accordance with this opinion.

Reversed.