## BUCKLER *v.* DAVIS SAND AND GRAVEL CORPORATION

[No. 146, September Term, 1959.]

534

Decided February 24, 1960.

The cause was argued before BRUNE, C. J., and HENDER-SON, HAMMOND, PRESCOTT and HORNEY, JJ.

Edgar A. Wren and LeRoy Pumphrey, with whom were South Trimble, Jr. and Gardiner & Wren, on the brief, for appellant.

Waldo Burnside, for appellee.

HORNEY, J., delivered the opinion of the Court.

When the Circuit Court for Prince George's County dismissed the bill of complaint of Mary Ida Buckler (plaintiff or grantor) against the Davis Sand and Gravel Corporation (defendant or grantee) for injunctive relief to prohibit the continued use by the defendant of an allegedly terminated easement,[1] the plaintiff appealed.

On January 31, 1951, the plaintiff (and her husband now deceased) granted to the defendant a tract of land (herein

---

1. In *Buckler v. Davis Sand & Gravel Corp.*, 208 Md. 162, 117 A. 2d 562 (1955), a mortgage foreclosure proceeding, in which it was further alleged that this same easement had been extinguished and terminated, we held that a default in the mortgage on the Buckler Tract did not work a forfeiture of the easement, but found it unnecessary to decide at that time whether the mining on the Goddard Tract was fairly within the contemplation of the parties and affirmed an order of the lower court denying the injunctive relief then sought. There is no claim, nor is it even suggested, that the former case [208 Md. 162] is *res judicata* to the instant case.

called the Buckler Tract) consisting of 25.791 acres[2] of sand and gravel deposits situated in the Surrattsville District of Prince George's County. At the time of the conveyance the defendant was engaged in mining sand and gravel in and about the area and had at that time several other "holdings" of sand and gravel pits adjacent to the Buckler Tract.

Incident to the conveyance and by the same deed there was also granted to the defendant a 45-foot easement across other land of the grantors from the public highway to the Buckler Tract. [The grant of this easement was limited as follows:

> "The * * * right-of-way is granted and conveyed for only so long as the grantee, its successors or assigns, mines the * * * [Buckler Tract] and its or their holdings of adjacent property as a sand and gravel pit. It is intended that upon a failure of the grantee, its successors and assigns, to use the said right-of-way in conjunction with its or their mining operations for a period of longer than one year then, and in that event, the property of the * * * [grantors], their heirs and assigns, shall be unencumbered by said right-of-way without the necessity of any act on their part to terminate said right-of-way."]

Within less than six months after it had purchased the Buckler Tract, the defendant—on July 9, 1951—acquired another tract of sand and gravel deposits (herein called the Goddard Tract) adjoining the other land of the plaintiff, on which it constructed a sand and gravel processing plant. It is in this plant on this after acquired tract that all sand and gravel from the original tract and pits was processed and in which the sand and gravel from other after acquired pits is now being processed.

The defendant concedes that the mining operations which commenced on the Buckler Tract shortly after its acquisition

---

2. On May 21, 1951, the defendant reconveyed to the plaintiff 2.55 acres of this same tract, but that fact has no bearing on the present controversy.

and were conducted—extensively at first for about two years and then only nominally in the later years—ceased on September 7, 1957, until November 13, 1958, when the defendant mined the tract for only part of one day, and apparently has not mined it since. Moreover, it appears that all of the "adjacent holdings" owned or leased by the defendant on January 31, 1951, had been disposed of prior to the last day of active operation [September 7, 1957] on the Buckler Tract.

On September 19, 1958, the plaintiff challenged the right of the defendant to continue use of the easement and, when it refused to desist, this proceeding was filed on December 1, 1958.

The plaintiff contends that she is entitled to enjoin the defendant from continuing to use the easement at all or, if that be denied, to enjoin the defendant from subjecting the easement to the increased burden it is now required to undergo. It is difficult to ascertain with certainty the contentions of the defendant. Other than a claim that "all the commercially feasible sand and gravel" has not been removed from the Buckler Tract, the defendant seems to contend that because it is still operating the processing plant on the adjoining after acquired Goddard Tract and is still mining sand and gravel on the after acquired holdings of "other" adjacent property, it is entitled to continue to use the easement "in conjunction with" its "mining operations," which it asserts "must include digging, processing, holding for sale, selling and delivering."

The chancellor—who apparently ascribed a broader meaning to the words "successors and assigns" than the usually accepted meaning of those words, i. e., "those who succeed to the rights of a corporation"—in construing the easement, particularly the clause—"for only so long as the grantee, its successors or assigns, mines the * * * [Buckler Tract] and its or their holdings of adjacent property as a sand and gravel pit" —concluded that the defendant was not restricted to those holdings it owned or leased on the date [January 31, 1951] the easement was granted. On the contrary he concluded that the defendant had a right to use the easement so long as it, and its successors or assigns, continued to mine sand and gravel on any of "its or their holdings" of property ad-

jacent to the Buckler Tract—regardless of when such holdings were acquired—because the phrase was "broad enough to cover other property in the same area which by the nature of things, could be used practically and economically in connection with this mining operation." We do not agree.

When an easement is acquired by an express grant, as was the case here, the extent of the rights thereby granted must necessarily depend upon a proper construction of the conveyance or that part of it by which the easement was created. The primary rule for the construction of contracts generally —and the rule is applicable to the construction of a grant of an easement—is that a court should ascertain and give effect to the intention of the parties at the time the contract was made, if that be possible.

In the instant case the easement was granted for only so long as the grantee, and its successors or assigns, mined the Buckler Tract "and its or their holdings of adjacent property as a sand and gravel pit." At the time of the grant [January 31, 1951] the only holdings of the defendant, in addition to the Buckler Tract—which was acquired by the same deed by which the easement was acquired—were the Crawford and Schultz pits, both of which were subsequently disposed of before the defendant ceased mining the Buckler Tract. The Goddard Tract—which adjoins the Buckler Tract and on which the processing plant was erected—as well as the several pits presently leased or owned by the defendant—from which sand and gravel is mined and transported to the processing plant over the easement in question—were not acquired until after the easement had been created.

When, therefore, the obviously unambiguous terms of the easement are read as we read them and the constituent words are given the plain and ordinary meaning we give them—as we must since there is nothing in the record by way of extraneous circumstances to indicate or even suggest that the servient estate might thereafter be burdened to a greater extent than was expressed in the grant of the easement [*Fendall v. Miller*, 99 Ore. 610, 196 P. 381 (1921)]—it is difficult to comprehend that the parties, or either of them, had contemplated future acquisitions of other "holdings of adjacent prop-

erty." Instead we think the contrary is true. Any other interpretation would produce a strained construction unwarranted by the language used. In *Dierssen v. McCormack,* 82 P. 2d 212 (Cal. App. 1938), it was held that the grant of an easement should not be construed to have been enlarged by reason of the wording of the grant unless an intention to so enlarge it is apparent. Moreover, since the grant by which the servitudes were created was designed to confer rights and impose obligations which otherwise would have had no existence, the grant should have been strictly (not liberally) construed. *Dickson v. Arkansas Louisiana Gas Co.,* 193 So. 246 (La. App. 1939).

This brings us to a consideration of the law with respect to a use which is not connected with the dominant estate. There is no doubt that the easement granted was for use in connection with the Buckler Tract and the Crawford and Schultz pits only and could not be used for the benefit of other tracts or pits. *Albert v. Thomas,* 73 Md. 181, 20 Atl. 912 (1890); *The Redemptorists v. Wenig,* 79 Md. 348, 29 Atl. 667 (1894); *West Arlington Land Co. v. Flannery,* 115 Md. 274, 80 Atl. 965 (1911). See also *Diocese of Trenton v. Toman,* 74 N. J. Eq. 702, 70 Atl. 606 (1908); *French v. Marstin,* 32 N. H. 316 (1855). It is also certain that the easement cannot be extended by the owner of the dominant estate to accommodate land which he did not own when the easement was acquired, unless, of course, the grant of the easement so provided. *Hales v. Atlantic Coast Line R. Co.,* 172 N. C. 104, 90 S. E. 11 (1916); *Diocese of Trenton v. Toman, supra; Smith v. Porter,* 76 Mass. 66 (10 Gray 1857); *Stearns v. Mullen,* 70 Mass. 151 (4 Gray 1855). See also 19 Corp. Jur., *Easements,* § 227.

In *Albert,* a leading case on the subject, the gist of the rule is that *an easement appurtenant to a lot cannot be used for the purpose and benefit of another lot to which no such right is attached, even though such other lot be adjoining that to which the easement belongs.* This rule covers an after acquired lot. The reason for the rule is that if it were otherwise a grantee, as the owner of the dominant estate to which the easement is appurtenant, in a case such as this, could pur-

chase an indefinite number of adjoining or adjacent sand and gravel pits, annex the easement to them and virtually deprive the grantor of all benefits from the servient estate. *Diocese of Trenton v. Toman, supra; Shroder v. Brenneman,* 23 Pa. 348 (1854).

We think it is clear that the defendant was never entitled to use the easement as the means of ingress to and regress from the after acquired Goddard Tract, and, the only rights created by the easement, having terminated, the defendant should have been enjoined from continuing to use it.

The decree of the lower court will be reversed, and, since the plaintiff also sought damages for unlawful trespass, we shall remand the case for the entry of an appropriate decree in conformity with this opinion and for the award of such damages as may be found to be due, if any.

> *Decree reversed and case remanded for the passage of a decree in conformity with this opinion and for further proceedings, if required, the appellee to pay the costs.*