## CHARLES J. BAKER vs. WILLIAM F. FRICK.

*Question whether the Grant of a Private right of Way over the land of the Grantor prevents his Erection of Gates upon the Road at its termini—Questions for the Jury.*

Nothing passes as incident to the grant of a private way over one's land, but that which is necessary for its reasonable and proper enjoyment.

What is necessary for such reasonable and proper enjoyment of the way granted, and the limitations thereby imposed on the use of the land by the proprietor, depends upon the terms of the grant, the purposes for which it was made, the nature and situation of the property subject to the easement, and the manner in which it has been used and occupied.

In an action by the grantee of a private right of way against the grantor, for the obstruction of the way by the erection of gates, it was HELD:

That the questions whether under all the circumstances of the case as disclosed by the testimony, the gates were necessary to the defendant for the useful and beneficial occupation of his land, looking to the situation of his property; and whether the particular gates complained of were usual and proper under the circumstances; and the further question whether their existence upon the road interfered with the reasonable use of the right of way by the plaintiff, considering the situation of his property, and the manner in which it was occupied, and the intent of the parties as to the mode in which the right of way was to be used, were all questions proper to be decided by the jury upon the evidence in the case.

APPEAL from the Superior Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., STEWART, GRASON, MILLER and ALVEY, J.

22       v. 45.

*Arthur W. Machen* and *Fred'k W. Brune*, for the appellant.

*William F. Frick* and *S. Teackle Wallis*, for the appellee.

BARTOL, C. J., delivered the opinion of the Court.

The appellant and appellee are owners of two parcels of land lying contiguous to each other in Baltimore County. Under certain deeds and contracts, contained in the record, the appellant is entitled to a right of way over the land of the appellee, *by a road twenty-five feet wide,* which has been laid out, graded and made at the joint expense of themselves and Alexander Rieman another adjoining proprietor who is also entitled to the same right of way. The agreements under which the right of way is claimed were executed in September 1873, and the road was constructed soon afterwards. The appellee, for the more secure and convenient use of his property, has placed gates upon the road at its *termini,* and claims the right to maintain the same; while the appellant, claiming that he is entitled to an open and unobstructed road of the width of twenty-five feet, has instituted this suit for an alleged unlawful obstruction of the same by the gates of the defendant. The case was docketed by consent, and all errors of pleading and questions of jurisdiction were waived by agreement.

Evidence was introduced showing the relative location of the lands of plaintiff and defendant, and the manner in which they were acquired, and have been occupied and used, and the several agreements which have been, from time to time, entered into between the successive owners thereof with regard to rights of way over each other's lands, and the mode in which such rights have been used and enjoyed. This evidence is quite voluminous, it is fully set out in the record, and in the briefs, and need not be stated at length in this opinion.

The first question presented by this appeal is raised by the *first* prayer of the appellant, and the prayer of the appellee. By the former, the Court was asked to instruct the jury, "if they find the execution by Frick, Baker and Rieman of the several papers dated the 3rd September 1873, and that a road-bed had been made and constructed under said agreement twenty-five feet wide, from the point of intersection of the lands of said Frick, Baker and Rieman, out to the old Frederick road, as shown by the plats made by *Mr. Boughan,* offered in evidence, then by the true construction of said agreement, said Frick had no right afterwards to obstruct said road by gates, or to diminish the width of it, by fences or other obstructions." This prayer was refused, and the prayer of the appellee was granted, instructing the jury "that upon a proper construction of the agreement of September 3rd 1873, or any other papers of that date, executed between the parties, there is nothing in the said agreement and papers or any of them, which entitles the plaintiff as matter of law, to an open road without gates over the land of the defendant."

The agreements referred to, are designated as No. 1, No. 2 and No. 3. By No. 1, Frick agrees to give to Baker and Rieman "*a right of way through his land and premises by a road twenty-five feet wide to be made,*" then follows an agreement that the cost of making the road shall be paid by the parties jointly. The line of the road is then particularly designated.

No. 2, is an agreement between the same parties, and *Boughan* the engineer, wherein the latter contracts to construct the road, "to cut, fill, grade and make a good and practicable road twenty-five feet wide."

By No. 3, Baker agrees to grant to Frick a right of way not less than twenty-five feet wide, through Baker's lands, from the terminus of said before mentioned road-way, and connecting therewith southwardly to the Frederick Turn-

pike road.    But Baker to be under no obligation to grade
or construct the road-bed of said right of way, until the
uses of his lots fronting thereon shall in his opinion render
the same necessary.    The agreement further provides that
" when the said road shall be so graded hereafter, as
to make a continuous communication between the old
Frederick road and the Frederick Turnpike road, the
owners of all property fronting thereon, shall be entitled
to use the same in either direction, as a common right of
way, provided they pay their respective due proportions
of the expenses of making, and keeping the same in
good repair."    It appears from the evidence that the
road contemplated in this agreement has not yet been
constructed.

Construing the agreements in the light of surrounding
circumstances, as these are disclosed by the testimony,
they do not, in the opinion of a majority of the Court
either by their terms or legal effect, necessarily deprive
the defendant of the right to erect gates on the road at
its *termini*.    His right to do so depends upon other con-
siderations, and is not necessarily concluded by the agree-
ments.    These do not expressly grant to the plaintiff an
open road without gates.    The road in question is a
private way over the defendant's lands.    "Nothing passes
as incident to such a grant, but that which is necessary
for its reasonable and proper enjoyment."    3 *Kent,* 419,
420.

What is necessary for such reasonable and proper enjoy-
ment of the way granted, and the limitations thereby
imposed on the use of the land by the proprietor, depends
upon the terms of the grant, the purposes for which it was
made, the nature and situation of the property subject to
the easement, and the manner in which it has been used
and occupied.

As said by MARSHALL, C. J., in *Maxwell vs. McAtee,*
9 *B. Mon.,* 21, "Notwithstanding such a grant, there

remains with the grantor the right of full dominion and use of the land, except so far as a limitation to his right is essential to the fair enjoyment of the right of way which he. has granted.   It is not necessary that the grantor should expressly reserve any right which he may exercise consistently with a fair enjoyment of the grant. Such rights remain with him, because they are not granted.   And for the same reason, the exercise of any of them cannot be complained of by the grantee, who can claim no other limitation upon the rights of the grantor, but such as are expressed in the grant, or necessarily implied in the right of reasonable enjoyment."

In that case it was decided that " the grant of a right of way over or through the lands of an individual, does not imply that the grantor may not erect gates at the points, where the way enters and terminates."   That decision has been approved by Courts of high authority in other States.   *Bean vs. Coleman*, 44 *N. H.*, 539 ; *Garland vs. Farber*, 47 *N. H.*, 301;   *Hoopes vs. Alderson*, 22 *Iowa*, 161 ; *Bakeman vs. Talbot*, 31 *N. Y.*, 366, 370, 371 ; *Huson vs. Young*, 4 *Lansing*, 63.   The appellant's counsel have referred to *Woolrych on Ways*, 49, (4 *L. Lib.*,) in which it is said "If a private man have a way over the land of another by prescription or grant; the grantor has no right to make a gate across the path, and action on the case will lie against the *tort feasor* for so doing," and for this, is cited *James vs. Hayward, Sir Wm. Jones*, 222.   The same case is cited in *Gale on the Law of Easements*, 395m, there the language of Sir Wm. Jones is differently stated the words being "*by prescriptive grant*," and not as in Woolrych "by *prescription or grant*."   By reference to the case of *James vs. Hayward* it appears that the way there in question was a highway, the plaintiff over whose land the way crossed erected a gate thereon, it was broken down by the defendant and the latter was sued in trespass. The language of JONES, J., with reference to putting a

gate across a private way, was used by him in pronounc-
ing his judgment, by way of argument or illustration,
and is too general to serve as an authority in the present
case.    It is clear that the decision in *James vs. Hayward*
has no application.

It follows from what has been said that, in the opinion
of a majority of the Court, there was no error in granting
the defendant's prayer, and refusing the first prayer of the
plaintiff.    These prayers present the question of the legal
construction and effect of the agreements.    The second
prayer of the plaintiff asked the Court to instruct the jury
that if they found the gates erected by the defendant,
interfered with the reasonable and convenient use of the
said road by the plaintiff, then the jury ought to render a
verdict for the plaintiff.    We state the substance of the
prayer, not pursuing its form.    It was specially excepted
to by the defendant, "because there was no sufficient legal
evidence in the case, to show that the gates in question
interfered with the reasonable or convenient use of the
road by the plaintiff, or otherwise to support the hypothe-
sis of fact on which said prayer is founded."    The Court
below rejected the prayer for the reason stated in the ex-
ception, and instructed the jury "that under the rulings
of the Court their verdict must be for the defendant."

To this instruction special exceptions were filed by the
plaintiff as follows :

"1st.  Because it assumes as matter of fact that the gates
erected by the defendant are necesssary to the exercise of
defendant's rights in the premises."

"2nd.  Because it assumes the fact that the said gates
are usual gates, under the circumstances of this case, as
disclosed in the evidence."

"3rd.  Because it assumes that the lands of the plaintiff
and defendant, affected by the road in question in this
case, were, at the time of the making of the agreements,
and of the grievances complained of, farm lands."

"4th. Because it assumes that the gates which the defendant might be entitled to erect were farm gates."

"5th. Because it assumes as matter of fact, that the gates erected by the defendant, as shown by the evidence, were usual and sufficient farm gates."

In our opinion there was error both in refusing the *second* prayer of the plaintiff, and in the instruction given to the jury, to find for the defendant.

The questions whether under all the circumstances of the case, as disclosed by the testimony, the gates were necessary to the defendant for the useful and beneficial occupation of his land, looking to the situation of his property; and whether the particular gates complained of, were usual and proper under the circumstances, and the further question whether their existence upon the road interfered with the reasonable use of the right of way by the plaintiff, considering the situation of his property and the manner in which it was occupied, and the interest of the parties as to the mode in which the right of way was to be used; these were all questions proper to be decided by the jury, upon the evidence in the case. On all these questions testimony was offered, legally sufficient to be submitted to the jury.

"The doctrine that the facilities for passage where a private right of way exists, are to be regulated by the nature of the case, and the circumstances of the time and place, is very well settled by authority. (*Hemphill vs. City of Boston*, 8 *Cush.*, 195 ; *Cowling vs. Higinson*, 4 *Mees. & W.*, 245.) The last case determines in effect, that the extent of the privilege created by the dedication of a private right of passage, depends upon the circumstances, and raises a question for the determination of the jury." *Bakeman vs. Talbot*, 31 *N. Y.*, 370. (Per DENIO, Judge.) We refer also to *Hawkins vs. Carbine*, 3 *Exch.*, 914 and *Huron vs. Young*, 4 *Lansing*, 64.

Being of opinion that there was error in refusing the plaintiff's second prayer, and in the instruction given by the Court to the jury, the judgment will be reversed and a new trial ordered.

*Judgment reversed, and*
*new trial ordered.*

(Decided 23rd June, 1876.)