FRANCIS L. WALTON, JR., and ELIZABETH R. WALTON, his wife, GEORGE B. GLACKIN and NAOMI M. GLACKIN, his wife, ROBERT H. GORDON and EDYTHE S. GORDON, his wife, EDWARD A. MONTAGUE and MARY E. MONTAGUE, his wife, and VICTOR G. ESKER and MARY LESLIE ESKER, his wife,

*vs.*

CHARLES M. POPLOS and LILLIAN R. POPLOS, his wife, GERALD A. ROY and JANE H. ROY, his wife, EDWARD MUCHA, SR., and CECELIA R. MUCHA, his wife, GEORGE P. KEEKEEGAN and MARY E. KEEGAN, his wife, GUERNIE ROGER KNOWLES and CLEMMIE E. KNOWLES, his wife, and RAYMOND L. PHILLIPS and ELSIE T. PHILLIPS, his wife.

*New Castle, December 13, 1951.*

*Clement C. Wood,* of Young & Wood for plaintiffs.

*W. Thomas Knowles,* of Knowles & Allmond, for defendants.

BRAMHALL, VICE CHANCELLOR: The plaintiffs and defendants are all owners and occupiers of land in a development known as "Elsmere Manor," New Castle County, Delaware. All of the properties in this development were originally purchased from one owner, who had the development laid out in lots, under a general plan of development. The properties were conveyed to the different owners under and subject to certain restrictive covenants, one of which related to the use of certain walkways and driveways appurtenant to the particular lot and leading from that lot to a general parking area as shown on the plot. No parking area or garage was provided for on the individual lots. The restrictive covenant pertinent to this case is as follows:

"Together with the exclusive use of a certain garage compound or parking area, designated on the above mentioned Plan as No. 147; and the use in common of all walkways and driveways appurtenant to the above described lot of land and parking area, as indicated on the said Plan and as fully set forth in a certain deed recorded in Deed Record R, Volume 43, Page 580, as amended by an agreement recorded in Deed Record N, Volume 44, Page 23; subject, however, to the payment of a proportionate share of the expense of keeping said parking area, walkways and driveways in good order and repair."

The only entrance to the rear of the houses in this development is through the walkways leading from different driveways which enter the development from one of the streets surrounding it. There are approximately six driveways in the whole development, which sometimes makes it necessary for one who desires to go to the rear of a particular house or lot to pass through, by means of said walkways, the properties of a number of lot owners, in some cases, amounting to eight or nine owners.

According to the testimony there are three hundred and sixty-three homes built on this development. In order to secure more privacy for themselves and their families, approximately sixty of the owners thereof have erected either

fences or gates on the dividing lines of their properties across the right-of-way. In the cases of the defendants in this suit at least one or more had fences erected across the right-of-way at the time of the institution of these proceedings. The others had swinging gates, some with bolts or automatic latches and some with both bolts and latches.

Plaintiffs instituted this action to compel the defendants to remove the fences and gates across the walkways, alleging that they obstructed the way given to plaintiffs under the restrictive covenants in their deeds. Those fences which may have been erected by any of the defendants, as far as the same affected the walkways, were removed after the institution of this action and swinging gates erected on the walk-ways.

Under a preliminary motion in this suit I previously held that this was what is known as a "spurious class action" and that the action could be for the benefit of any persons occupying any of the premises in question who might wish to intervene as a party to this suit. Therefore, any judgment in this suit will bind only the parties named in this action.

Have the defendants violated the restrictive covenants with reference to the use of the right-of-way?

It is conceded by defendants that the walkways may not be barred by permanent fences. Those of the defendants who had erected permanent fences at the time of the institution of this action have removed the same and have erected in place thereof swinging gates. Some of these gates have automatic latches, some have bolts, and some have both automatic latches and bolts.

A grant or reservation of an easement in general terms is limited to a use which is reasonably necessary and convenient and as little burdensome to the servient estate as possible for the use contemplated. Therefore, nothing passes as an incident thereto which is not necessary to

its fair enjoyment. What is necessary for such reasonable enjoyment depends upon the terms of the grant, the purposes for which it was made, the nature and situation of the property subject to the easement and the manner in which it has been used and occupied. *Williamson v. McMonagle,* 9 *Del. Ch.* 380, 83 *A.* 139. There always remains with the servient estate the right of full dominion and use of the land except in so far as a limitation thereof is essential to the reasonable enjoyment of the easement. 17 *Am.Jur.* 994.

In the absence of language or circumstances calling for a different construction, the owner of the servient tenement is entitled to maintain a gate thereon at either end of the way, that is, at the point where the servient tenement abuts upon a highway or upon another property. See *Tiffany on Real Property, 3d Ed. Vol. 3, paragraph 812, page 858;* 28 *C.J.S., Easements,* § 98, *page* 781. The reason for this rule is that, at times, the inconvenience incurred by the dominant tenement, compared to the great inconvenience sometimes sustained by the servient tenement, is comparatively slight.

If the difficulty of which the plaintiffs complain in this case were caused entirely by one gate, a court might be constrained to hold that the inconvenience caused to the dominant tenement by the erection of a swinging gate would be much less important than the protection which would be afforded to the servient tenement in use of the property involved. However, we are here concerned with a walkway which involves more than one gate. In fact, should the defendants be permitted to maintain gates upon either side of their boundary line and should other tenants in the same block also decide to erect gates, a person coming from his own home and going to the parking area might be confronted with at least seven or eight gates, all of which would have to be unlatched or unbolted, or sometimes both, before that person would arrive at the parking area. The entrance to the rear of these houses is solely by way of this walkway. It is also the sole entrance for any mechanics or tradesmen who

might be coming to one of these homes to make deliveries or to make repairs. That person would have to lift the latch or remove the bolt, or both, upon the gate, take whatever he might be carrying with him inside the gate, close the gate and then proceed to do the very same thing several other times before arriving at the home where he was going for the purpose of delivering supplies or making repairs. A home owner going to or from his home would be faced with the same difficulty. In my opinion this would place too great a burden upon those having a lawful right to use of the walk-way.

It would appear that it was the purpose of the defendants deliberately to prevent the use of this walkway over their property. At the time of the institution of this suit, the walkway on some of the servient tenements was completely blocked by a solid fence. After the institution of this action those of the defendants who had erected fences, on advice of counsel, removed the same and erected gates. In other cases, where the owners are not named as defendants, the fences are still in existence and the only way in those cases the walkway can be used is for the persons using the same to climb over the fence.

In the case of at least one of the defendants the fence was removed and a swinging gate substituted therefor after notice of this action. The testimony further discloses that in other instances owners of property (not named as defendants) in this development have placed fences across the walkways, completely obstructing their use by other owners. The testimony of several of the defendants clearly showed their objection to any use of the walkway over their land. The testimony in this case therefore clearly shows that there was a general intention on the part of a number of the property owners, including the defendants, to deprive others of their right to the lawful use of the walkways.

While there is now no fence involved across the walkway of any of the defendants, nevertheless, in my opinion,

the obstruction has not been eliminated by the placing of a gate with latches or bolts, or both, on the line of each property owner. Although it may have lessened somewhat the inconvenience to which the users of said walkway were put, it has not eliminated the same to such an extent as not to constitute an obstruction.

I conclude that an injunction should issue restraining the defendants from violating the restrictive covenant relative to the walkways on said development and that each of the defendants remove from his, her or their property the gate or other obstruction across said walkway.

An appropriate order will be entered on notice in accordance with this opinion.