SIMON DISTRIBUTING CORPORATION *v*. BAY
RIDGE CIVIC ASSOCIATION, INC. ET AL.

[No. 132, October Term, 1954.]

*Decided June 22, 1955.*

474

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Matthew S. Evans* and *William J. McWilliams*, with whom were *McWilliams, Evans & Melvin* on the brief, for the appellant.

*John G. Rouse, Jr.*, with whom were *Rouse & Morton* on the brief, for the appellees.

BRUNE, C. J., delivered the opinion of the Court.

This is a controversy between owners of lots in a waterfront development as to whether or not a right of way may be obstructed by a gate or a removable chain suspended between posts on either side of the right of way. From a decree declaring that the right of way might not be so obstructed the defendant appeals.

The development which is known as Bay Ridge, is located in Anne Arundel County. In part it fronts on Chesapeake Bay and the Severn River and in part it fronts on a body of water known as Lake Ogleton, which is connected by a channel with the River and Bay. One arm or cove of Lake Ogleton is bordered on three sides—west, south and east—by the Bay Ridge development. A road called "Lake Drive" runs around this cove more or less in the shape of a horseshoe. At each end of the horseshoe, Lake Drive runs roughly through the center of a peninsula with lots on each side running down to the water. On the eastern side of the horseshoe the peninsula lies between Lake Ogleton and the River and Bay; on the western side the peninsula juts out into Lake Ogleton. Lake Drive does not run to the end of either peninsula. On the eastern side it ends at a cross-way

called "Sands Path", and on the western side it ends at a cross-way called "Worden Path". Each of these ways runs across its peninsula from the water's edge on one side to the water's edge on the other.

This case concerns the northern tip of the western side of the horseshoe. The defendant owns all of the lots to the north of Worden Path—that is, the whole tip of the peninsula beyond the end of Lake Drive. It also owns five lots south of Worden Path, three on one side of Lake Drive and two on the other. It thus owns all of the lots abutting on Worden Path and on both sides of the last hundred and fifty or so feet of Lake Drive. It wishes to put up a chain between posts near the southern end of these lots, thus restricting the access to the stub end of Lake Drive and to Worden Path. The defendant's president and his family occupy a summer residence on the corporation's property north of Worden Path.

The individual plaintiffs are the owners of two water-front lots to the south of the defendant's property lying on the west side of Lake Drive, and the other plaintiff, Bay Ridge Civic Association, Inc., owns property in another part of the development and is a community association of which some one hundred and twenty-five Bay Ridge lot owners are members.

The development of Bay Ridge began in 1922, when the original developer, Bay Ridge Realty Corporation acquired three hundred and eighty acres of land and subdivided the tract into numerous lots and roads, streets and paths. It had a plat made and sold lots by reference thereto. Between 1924 and 1934 it filed for record four separate plats of parts of the tract, one of which, made in 1924 and filed in 1931, covered the area here involved. The owner negatived any dedication of the roads, streets or paths. The first lots were sold in 1922 and were described by reference to the plat. After the various small plats were recorded sales and convayances of lots in Bay Ridge were made by reference

to the recorded plats. The defendant acquired its lots north of the "T" made by Worden Path's crossing the end of River Drive in April, 1951, and acquired its lots south of Worden Path in 1951, 1952, 1953 and 1954 (the last after this suit had been filed.

Despite the avoidance of dedication of the beds of roads and streets shown on the plats, the then successor in interest of the original developer in 1951 conveyed some roads, including Lake Drive, to the County Commissioners of Anne Arundel County for use as public roads. In April, 1953, the successor of the original developer conveyed the bed of Worden Path by a quit-claim deed to the defendant; and in July, 1953, on petition of the defendant, the County Commissioners closed the stub end of Lake Drive lying between the lots south of Worden Path then owned by the defendant, and in August, 1953, conveyed the bed of this closed portion of Lake Drive to the appellant. The decree of the trial court declared that the defendant owned the beds of the Drive and Path in fee simple subject to the easements of the plaintiffs and other lot owners in Bay Ridge to the wholly unobstructed use of Lake Drive and Worden Path to get to and from Lake Ogleton and for any other purpose reasonably incident to the proper use and enjoyment of their lots. The plaintiffs did not take a cross-appeal from that part of the Decree which established the defendant's ownership of the beds of these roads or ways.

Lake Drive is shown on the plats as fifty feet wide and Worden Path as thirty feet wide. Lake Drive is actually paved as a road for a width of about twenty feet. Worden Path is unpaved and is considerably overgrown, despite some cleaning out of underbrush by the defendant. It can be traversed on foot, but is not fit for use by automobiles. A turnabout has developed for use by cars and trucks at or near the intersection of Lake Drive and Worden Path. In part it is on one of the defendant's lots south of Worden Path.

The defendant's desire to obstruct Lake Drive comes from the fact that "parkers", who are described as members of the general public and not Bay Ridge residents, make use of Lake Drive and the turnabout area far into the night as a lovers' lane; and since their conduct is said to be at times less than exemplary and they leave broken bottles, beer cans and other trash behind them, Mr. Simon and his family have experienced considerable annoyance.

There is no real dispute as to the law. It was recently stated by Judge Delaplaine in *Bishields v. Campbell*, 200 Md. 622, at 624-625, 91 A. 2d 922, when that case came before this Court on a second appeal:

> "As the second decree has given rise to controversy over the meaning of 'free use of the roadway,' we think it appropriate to state the general principle that a right of way is merely a right of passage and the owner of the land is entitled to use it for any purpose that does not unreasonably interfer with the use of the easement. Hence, it is held in this State that, in the absence of an agreement or surrounding circumstances to the contrary, the owner of the servient estate has the right to maintain gates on a right of way at the points where the way begins and terminates. *Baker v. Frick,* 45 Md. 337, 341, 24 Am. Rep. 506. Of course, if a grant, construed in connection with the surrounding circumstances, shows an intention that no gate shall be erected, such a showing of intention is controlling. It is equally true that the fact that a gate was standing at the time of a grant is a circumstance that strengthens the presumption that the parties contemplated that a gate might thereafter be maintained."

See also *Tiffany, Real Property,* 3rd Ed., Vol. 3, Sec. 812, page 357; *Restatement, Property, Servitudes,* Section 486; 17 *Am. Jur., Easements,* Section 121; 28 *C. J. S.,*

*Easements,* Section 98 (1) (b) ; 73 *A. L. R.* 778, Annotation, *"Right to maintain gates or bars across right of way."* The difficulty comes over the application of the law—in other words, does the grant, construed in connection with the surrounding circumstances, show an intention that no gate or other obstruction shall be erected?

The defendant-appellant contends that there is no agreement and that there are no surrounding circumstances to deprive it of the right to place a removable chain across the right of way at the point where it joins the public road portion of Lake Drive, and urges that the inconvenience to other lot owners in Bay Ridge would be very slight in comparison with the advantage to the defendant of excluding undesirables. The plaintiffs-appellees take the opposite position and contend that the grant, which they say is contained in the plat, construed in connection with the surrounding circumstances, shows an intention that no gate, chain or other obstruction should be erected. In a full and characteristically vigorous opinion the late Judge James Clark, who heard the case in the Circuit Court, in substance adopted the views for which the plaintiffs now contend.

There is force in the contentions of each side. Worden Path ends in a marsh at each end and there are at present no boating or bathing facilities at either end. The type of obstruction which the defendant seeks to erect would cause no interference to pedestrians who could walk around the outside of either gatepost without having to touch the chain. The members of the Simon household and other visiting their residence, including persons having occasion to make deliveries there, would probably suffer more inconvenience from the chain than would anyone else; and little use seems to be made of the right of way by other residents of Bay Ridge.

The defendant relies, among other authorities recognizing the general rule that the owner of the servient tenement may erect gates at the termini of a right of

way over his land, upon a dictum in *Walton, et al. v. Poplas, et al.,* 32 Del. Ch. 292, 85 A. 2d 75, decided in 1951. That case involved a development in which the plaintiffs had right of way over walkways at the rear of defendants' lots. Several gates had been erected, and it was possible that if the defendants were entitled to maintain them, persons seeking to reach a common parking area might have to open and close seven or eight gates. The court held that this would be too great a burden. The dictum upon which the defendant relies is that "If the difficulty * * * were caused entirely by one gate, a court might be constrained to hold that the inconvenience caused to the dominant tenement by the erection of a swinging gate would be much less important than the protection which would be afforded to the servient tenement in the use of the property involved." This is a carefully guarded statement which lends some support, but not a great deal, to the defendant's contention.

In *Baker v. Frick,* 45 Md. 337, cited and followed in the *Bishields* case, a majority of the Court held that there was nothing in the agreements between the parties under which a right of way was granted that necessarily deprived the owner of the servient tenement of the right to erect gates at the *termini* of the right of way, and that his right to do so depended upon other considerations. The Court cited Chancellor Kent (3 Kent, 419, 420) in support of the rule that " 'Nothing passes as incident to such a grant, but that which is necessary for its reasonable and proper enjoyment.' " It then added: "What is necessary for such reasonable and proper enjoyment of the way granted, and the limitations thereby imposed on the use of the land by the proprietor, depends upon the terms of the grant, the purposes for which it was made, the nature and situation of the property subject to the easement, and the manner in which it has been used and occupied."

In this State the importance of access to the water in a waterfront development has been clearly recognized. *North Beach v. North Chesapeake Beach Land & Improvement Co.,* 172 Md. 101, 191 A. 71; *Williams Realty Co. v. Robey,* 175 Md. 532, 2 A. 2d 683; *Klein v. Dove,* 205 Md. 285, 107 A. 2d 82. The last of these cases dealt with a right of way. The Circuit Court for Anne Arundel County there held that the plaintiffs were entitled, in common with others, to use a part of the development known as the "lake area" which gave access to the river and were entitled to an unobstructed right of way over a strip of land adjoining the defendant's lot and entered a decree to that effect, which also required the defendants to remove obstructions from the right of way and restrained them from interfering with the plaintiffs' right of way. The decree was affirmed on appeal. In that case the right of way had been so thoroughly obstructed as to prevent its use at all, and the controversy turned largely on the defendants' claim that they had a right to block it entirely, which claim both the Circuit Court and this Court rejected. The issue there went far beyond the right to maintain a swinging gate or a removable chain.

Applying the tests set forth in *Baker v. Frick,* we find that the property retained by the grantor of the easement (the developer) was simply title to the bed of the roads or paths over which rights of way were granted by sales made on the basis of the plats. The grantor-developer obviously had no use for the property otherwise than as roads or paths, and hence had no apparent purpose to serve by putting up gates or chains at any point. The main purposes of the rights of way in this waterfront were evidently to enable lot owners and their families to get about in the development and to get to the water. Gates, chains or like obstructions across any roads or paths could only defeat this purpose or makes its attainment more difficult. The fair inference from the showing of these ways on the plats was, we

think, that they should be unobstructed, and we do not see how the defendant's acquisition of title to the beds of Worden Path and a portion of Lake Drive could alter the representations made to other purchasers of lots by the plats upon the faith of which lots in the development were sold.

We are not unmindful of the unpleasantness to which the occupants of the defendant's property have been or may be exposed by visits of "parkers" having no right to use Lake Drive or Worden Path, but we do not think that the rights of other lot owners in Bay Ridge can be taken away from them in order to prevent trespasses by others. We may also observe that we see no reason why the defendant may not erect a fence or posts or other obstacles to prevent the use of its property for a turnaround by others, including the owners of lots in Bay Ridge. Their rights to use Lake Drive and Worden Path do not authorize them to use any part of their neighbor's property as an addition to the road.

In accordance with the views above expressed the decree of the Circuit Court will be affirmed.

*Decree affirmed, with costs.*