## JAMES J. PARKER, III ET AL. *v.* T & C DEVELOPMENT CORPORATION

[No. 103, September Term, 1977.]

*Decided January 10, 1978.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, LEVINE, ELDRIDGE and ORTH, JJ.

*David H. Parrack,* with whom was *Eugene F. Herman* on the brief, for appellants.

No brief filed on behalf of appellee.

ORTH, J., delivered the opinion of the Court.

Crystal Beach Manor (Manor) is located on the Elk River in Cecil County, Maryland. It consists of a portion of some 500 acres which was acquired in 1926 by Crystal Beach Manor, Inc. and developed under a uniform plan and scheme of development for a waterfront and recreational community. Appellants, who are hereinafter referred to as "Parker, et al.," became, at various times, the owners of lots in Manor. The grants to them were subject to the same conditions in limitation, designated as "covenants, restrictions, rights and reservations." They were to be taken "to be real covenants running with the land and binding upon the heirs, successors, executors, administrators and assigns of the Grantor or Grantee for a period of ninety-nine years," and to "be kept by all parties owning, occupying or using said lot, lots or property. . . ." The grantor reserved the right "to the fee in all park land as laid out and plotted or shown on said plans now recorded or hereafter to be recorded, to be used by said Grantor for such purpose as they may determine, including erection of boardwalks, stores, theatres, dance halls, carousels, places of amusement, amusement piers, bath

houses, and all such other attractions and structures as are ordinarily found and constructed and enjoyed on waterfront properties at seaside resorts." A covenant gave the grantees and all other persons entitled to use the "park land, and beach front, as now laid out, existing and plotted or shown on said plans," the right in common "of the reasonable use of said park land and beach front . . . for ingress, egress and regress to, from and over the same, for such pleasures as are usually indulged in by the public on park lands and waterfront beaches, including bathing, boating, fishing and outing." It was further covenanted: "The beach before waterfront lots is available to all lot owners for reasonable use and enjoyment;" followed by the admonition "but users shall not leave garbage, trash or remains of camp fires." It was expressly declared: "Lot owners do not have riparian rights."

From the initial development of Manor in 1926 to about 1961 the beach and park areas, which included the amusement park buildings (concession buildings) of Crystal Beach Manor, Inc., were circumscribed by a series of small wooden posts with cable stringers between them so as to prohibit vehicular access to the park area containing the concession buildings other than by the roads. In 1961 the then owner of the park and beach property erected a chain link fence about six feet high around the beach and park areas. There were at least two openings in the fence on roads into the areas. These openings had no gates, leaving unrestricted access to the beach and park.

In 1975 all the interests in Manor which remained in Crystal Beach Manor, Inc. and its successors were obtained by T & C Development Corporation (T & C). T & C put gates at all the openings in the fence surrounding the beach and park areas. The gates were unlocked only at such times as the general public had access to the enclosed area in the commercial operation of the beach and park. Parker, et al., aggrieved by this restriction on their use of the beach and park areas, instituted an action in the Circuit Court for Cecil County seeking declaratory and injunctive relief with respect to their rights as lot owners in Manor's roads and beach and

park areas. After hearing the matter, the court issued a decretal order:

> "ORDERED AND DECREED that T & C Development Corporation, the Respondent, be and it is hereby enjoined from interfering with the free and uninhibited use and enjoyment of the streets in the development known as Crystal Beach Manor by the lot owners therein, and particularly the road across the 'park area'.... It is further ORDERED AND DECREED that subject to the limitations expressed in this opinion that the Respondent may impose on owners of lots in Crystal Beach Manor, and such other limitations as may be reasonable, T & C Development Corporation is hereby enjoined from denying said lot owners access to the said park and beach areas...."

Parker, et al. appealed to the Court of Special Appeals "from only that part of the Order and Decree relating to the right of lot owners in and to the park and beach areas...." We directed the issuance of a writ of certiorari before decision by the intermediate court.

The chancellor correctly determined that the grantor's reservation of the fee in the park land, to be used for such purposes as the grantor may determine, including the erection of structures as are ordinarily found at seaside resorts, put each lot owner on notice that Manor would be a commercial enterprise in the nature of a seaside resort. He also found that the lot owners were not granted "unlimited and unrestricted use of the park land and beach front," but only "the reasonable use" of those areas. He observed: "The question then is what is the reasonable use of the park, amusement area and public beach that the lot owners are entitled to."

Parker, et al. contended in the trial court that they were "entitled to the unrestricted use of the park and amusement areas as well as the public beach at all times." Their reason for purchasing the lots, they claimed, was to be near the water and enjoy the swimming and boating privileges that it

offered. It was with the thought in mind that they could enjoy these privileges without restrictions that they purchased their lots. T & C responded that "the reasonable use of the parks and beach by lot owners extends only to 'daytime hours and during the milder outside seasons;' that it does not contemplate free access to the amusement area when the buildings are closed for the season and the weather is unfit for bathing, boating, fishing and outing."

The chancellor found:

> "The park owner, [T & C], has a considerable capital investment in this enterprise. He has a right to protect his property, particularly against thieves and vandals. Enclosing his property by a chain link fence with gates that may be locked is certainly an acceptable means of affording such protection. It would be unreasonable for the lot owners to expect him to do otherwise. While [Parker, et al.] undeniably have the right to use the park and amusement areas and the beach, their insistence that their access to these areas be completely uninhibited and unrestricted at all times is unreasonable in light of the original scheme or plan for this development as a 'seaside resort.' Furthermore they were granted no such exclusive right by their deeds."

He concluded:

> "Use of the park land and beach front during hours when the amusement and public beach area is open to the public in the summer months is not an unreasonable restriction on the lot owners. However, restricting their use of these areas to the summer months would be unreasonable. Lot owners should be permitted to have access to these areas during daylight hours from early spring to fall." [1]

He thereupon issued the decretal order.

---

1. The chancellor noted: "To assure [lot owners] this right [T & C] may find it necessary to have a guard on duty during these months to grant them admittance through one or more gates in the fence around the area, unless some other satisfactory arrangement can be worked out between the parties to assure the lot owners of this right."

Parker, et al. do not contest that T & C's "easement was restricted in the sense that [its] predecessors had reserved the fee simple interest in beach and park areas." *See Desch v. Knox,* 253 Md. 307, 310, 252 A. 2d 815 (1969). They urge, however, that restricting their access to the beach and park areas to the daylight hours from early spring to fall violated the easement granted them.

"When an easement is acquired by an express grant, as was the case here, the extent of the rights thereby granted must necessarily depend upon a proper construction of the conveyance or that part of it by which the easement was created. The primary rule for the construction of contracts generally — and the rule is applicable to the construction of a grant of an easement — is that a court should ascertain and give effect to the intention of the parties at the time the contract was made, if that be possible." *Buckler v. Davis Sand, Etc., Corp.,* 221 Md. 532, 537, 158 A. 2d 319 (1960). "[T]he scope of the easement is to be determined from the language of the grant and any doubtful language must be resolved in favor of the grantee." *Reid v. Washington Gas Lt. Co.,* 232 Md. 545, 549, 194 A. 2d 636 (1963). The easement granted here gave Parker, et al. such use of the park land and beach front as was reasonable "for such pleasures as are usually indulged in by the public on parklands and waterfront beaches, including bathing, boating, fishing and outing." Upon a reading of the obviously unambiguous terms of the easement, giving the constituent words their plain and ordinary meaning,[2] it is difficult to comprehend that the parties had contemplated that the use of the areas be restricted to "daylight hours from early spring to fall" as found by the chancellor. *Buckler,* 221 Md. at 537. We believe that Parker, et al. were granted the designated use of the areas at night as well as in the daytime, and for twelve

---

2. The American Heritage Dictionary of the English Language (1969) defines "outing" not only as "An excursion or pleasure trip, often including a picnic," but also as "A walk outdoors; an airing." The first definition of the word in Webster's Third New International Dictionary of the English Language (unabridged, 1968) is "a trip or stay in the open. . . ." There was testimony at the trial to the effect that some of the most enjoyable use of the park and beach area was during the winter months and the nighttime. *See* Williams Realty Co. v. Robey, 175 Md. 532, 539-540, 2 A. 2d 683 (1938).

months a year, not only "from early spring to fall." Therefore, in enjoining T & C from denying lot owners access to the park and beach areas, the chancellor erred in limiting access to the daylight hours from early spring to fall. He also erred in making the injunction subject to ... such other limitations as may be reasonable...." Parker, et al. were entitled to "obtain a declaration of rights, status, or other legal relations under [their deeds]." Section 3-406 of the Courts and Judicial Proceedings Article of the Maryland Code (1974). By subjecting the injunction to "such other limitations as may be reasonable" the chancellor left the rights of Parker, et al. uncertain and indefinite. If the injunction is to be subject to limitations, the chancellor must clearly spell them out.

Parker, et al. opposed the enclosure of the beach and park areas by a chain link fence. The chancellor observed that T & C "has a right to protect [its] property, particularly against thieves and vandals," and that "[e]nclosing [its] property by a chain link fence with gates that may be locked is certainly an acceptable means of affording such protection. It would be unreasonable for the lot owners to expect him to do otherwise."

Parker, et al. do not quarrel with T & C's arguments that "there is no reasonable need for the property owner to be around [T & C's] buildings during the night time hours when the buildings are closed, nor with the proposition that there is no reasonable need for the owners to have free access to these buildings during the winter months when the buildings are closed." They suggest that a smaller area could be enclosed by a fence, or that "shutters and locks on windows and doors" would suffice and that T & C could solicit the assistance of the Maryland State Police in protecting the property. Indeed, Parker, et al. go so far as to indicate that if T & C provided the lot owners with keys to the gate locks, "such an arrangement would be far more reasonable enjoyment of the easement granted to them in their deeds than a fence which may or may not be opened at any particular time."

We think that, in the circumstances, the chain link fence,

even with locked gates, would not be an impediment to the easement under suitable arrangements which would enable the lot owners to have their due access to the land and beach areas. Such arrangements should be designated by the chancellor, giving heed to suggestions of the parties which he finds appropriate. *See Waldschmidt v. Vito,* 228 Md. 328, 179 A. 2d 884 (1962); *Millson v. Laughlin,* 217 Md. 576, 585, 142 A. 2d 810 (1958); *Simon Distr. Corp. v. Civic Ass'n,* 207 Md. 472, 477-481, 114 A. 2d 829 (1955); *Baker v. Frick,* 45 Md. 337, 340 (1876).

> *Decretal order of the Circuit Court for Cecil County issued 16 March 1977 affirmed with respect to the injunction pertaining to use and enjoyment of the streets of Crystal Beach Manor and vacated with respect to the injunction pertaining to access to the park and beach areas; case remanded for further proceedings and order in accordance with this opinion; costs to be paid by appellee.*